NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C. P.,
C. P., and G. P.

No. 1 CA-JV 24-0068

FILED 08-20-2024

---

Appeal from the Superior Court in Maricopa County
No.  JD33591
The Honorable Todd F. Lang, Judge

**AFFIRMED**

---

COUNSEL

Czop Law Fim, PLLC, Higley
By Steven Czop
*Counsel for Appellant Christina P.*

Robert D. Rosanelli, Phoenix
*Counsel for Appellant Joel P.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Vice Chief Judge Randall M. Howe joined.

---

**P E R K I N S**, Judge:

**¶1** Christina P. ("Mother") and Joel P. ("Father") separately appeal the juvenile court's order terminating their parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** Mother and Father ("Parents") have five children in common: (1) David, (2) Logan, (3) Claire, (4) Cassie, and (5) Grant (pseudonyms). Parents have a long history of substance abuse, criminal convictions, and DCS involvement dating back to early 2016.

**¶3** DCS initially removed the children from Parents' care in late 2016, but returned them in June 2019, after both parents completed reunification services. In 2020, DCS involvement resumed. The children were again taken into DCS custody and adjudicated dependent.

**¶4** Father participated in reunification services, and the children were returned to his custody in 2022. Within a month of returning to Father's custody, the juvenile court terminated Mother and Father's parental rights to their second child, Logan, due to ongoing substance abuse. Neither parent contested this termination.

**¶5** A few months later, Mother and Claire engaged in a physical conflict and DCS received reports that Mother was abusing fentanyl. DCS inspected the home and discovered fentanyl pills and burnt foil under a sink. Following the home inspection, Father tested positive for fentanyl, and Mother did not participate in testing.

**¶6** DCS removed the children and took temporary legal custody, where the children have remained since. Parents' oldest child, David, turned 18 in early 2023, resulting in his release from the dependency proceedings and DCS care.

**¶7**        In September 2023, DCS moved to terminate Parents' rights to the three remaining dependent children. They did not contest the termination of their parental rights as to their third child, Claire.

**¶8**        DCS offered Parents a variety of services including substance abuse treatment, behavioral-health support, and parenting education and skills services. Parents participated in supervised visitation and family connections (a behavioral-health service). But they did not participate in substance abuse treatment and missed multiple scheduled drug tests. When they finally submitted to drug testing, both Mother and Father tested positive for fentanyl.

**¶9**        At trial, Mother and Father complained that they should have been offered alternative services and be given "more time" to participate in services. Based on the positive drug tests, the numerous missed tests, and their refusal to acknowledge their drug use, the juvenile court found that neither parent had progressed towards sobriety in any meaningful way. The court explained that its primary concern was not "Mother and Father's parenting skills or love for their children," but was "their failure to demonstrate sobriety or to consistently participate in sobriety services." The court concluded that Parents' participation in some services, while laudable, could not excuse Mother's or Father's deficient participation in the other services aimed at addressing their substance abuse issues. The court found that denying termination would delay permanency and stability and that continued contact with the parents while not sober could create additional trauma and attachment issues in the children.

**¶10**        The juvenile court terminated Mother and Father's parental rights, finding that DCS had proven grounds for termination under A.R.S. §§ 8-533(B)(3) (prolonged substance abuse), (B)(8) (nine month out-of-home placement), and (B)(11) (recurrent removal) and that termination was in the children's best interests.

**¶11**        Mother and Father separately filed timely notices of appeal from the termination order. We have jurisdiction. *See* A.R.S. §§ 8-235, 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶12**        "The juvenile court may terminate a parent's rights if it finds by clear and convincing evidence that at least one of the statutory factors for termination exists and finds by a preponderance of the evidence that termination is in the child's best interests." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 471, ¶ 1 (2023); A.R.S. § 8-533(B). Mother and Father do not

challenge the statutory grounds for termination, so we address only the court's best interests finding.

¶13     Mother and Father both argue that the court's best interests finding was clearly erroneous. They insist the court did not give enough weight to the detrimental impact on the children, their efforts at reunification, and their interest in maintaining a positive parent-child relationship. Parents also point out that the children wanted to reunify with both parents.

¶14     We view "the record in the light most favorable to upholding the court's best-interests finding," *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 152, ¶ 21 (2018), and will "accept the juvenile court's findings of fact if reasonable evidence and inferences support them," *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). We cannot reweigh the evidence on appeal and will affirm the court's legal conclusions unless clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79, ¶¶ 30–32.

¶15     "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from [termination] or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis omitted). Courts "must consider the totality of the circumstances existing at the time of [termination], including the child's adoptability and the parent's rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1.

¶16     Here, the court expressly considered the totality of the circumstances and found, by a preponderance of the evidence, that the termination of both Mother and Father's parental rights was in the best interests of the children. The court found that the children are adoptable, bonded to the current placement, and are "enjoying a supportive and consistent home in which all needs are met." The court noted the current placement intends to proceed to adoption, which would allow the siblings to maintain their relationship. *See id.* at 146, 150–51, ¶¶ 13–14 (the court may find that a child would benefit from termination when a child is adoptable, or an adoption plan exists).

¶17     The court also found that denying termination would be detrimental to the children because it would "delay permanency and stability" and "could create further trauma and attachment issues in the Children." *See Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989) (The court may find that a child will be harmed by the continuation

of the parent-child relationship when it is "shown to be detrimental to [the child's] physical, mental and emotional well-being.").

**¶18**      Considering the parent-child bond, the court acknowledged that the children and the parents all love one another. But it found the bond insufficient to offset its finding that the parents' failure to address their long-standing substance abuse has rendered them unable to safely parent the children. *See Alma S.*, 245 Ariz. at 150, ¶ 12 ("The child's interest in stability and security must be the court's primary concern." (cleaned up)).

**¶19**      Reasonable evidence supports the court's findings, and we do not reweigh the evidence. The court did not err in finding termination was in the children's best interests.

**CONCLUSION**

**¶20**      We affirm.

